Stanard, J.
On the first and main question, that’
involving the enquiry whether or no the former judgment of this court in this case, adjudging the law on* the demurrer to evidence in favour of the demurrant,, and awarding a writ of enquiry, deprived the court, below of the power to allow an amendment of the pleadings, my opinion is, that that judgment was not an insuperable impediment to the allowance of such amendment, and that the court below, having the power to allow the amendment of the pleadings, possessed the consequential power to set aside the demurrer to evidence. My opinion is, that as a general proposition, an interlocutory judgment of this court,, which, if originally rendered in the court below,. would have left that court, at any subsequent term,, while the judgment remained interlocutory, at liberty to allow an amendment of the pleadings, would not necessarily preclude the allowance of such amendment: and if I doubted on this question, as a general proposition, I should think that it should be the law of this case, seeing that* the law on the" demurrer to evidence was decided in favour of1 the demurrant, not on the merits of the defence presented by the evidence, but on its supposed incoherence with the plea, not because the defence was not good, but because in effect it was not admissible under the plea, as' that plea *247 was construed by tbe court; and that the judge who delivered the prevailing opinion, did so, not doubting that when the case returned to the court below, that court might, on adequate grounds, allow an amendment of the pleadings, if asked for.
My opinion further is, that the power to allow an amendment of the pleadings was rightly exercised in this case.
I am further of opinion, that the demurrer to the replication to the second additional plea, was rightly sustained.
If that plea was good, then the replication is manifestly bad. The plea, according to the pretensions of the appellee, alleges Fairfax’s procurement from Lang of a conveyance of the whole land. If this be true, then Lewis was prevented by Fairfax from performing the covenant to procure a proper conveyance to Fairfax of a part, and is no longer liable to him on the covenant to procure such conveyance. Assuming this to be the construction of the plea, the replication attempts to involve in the issue on that plea, the extrinsic question, whether the deed of conveyance contained a covenant against taxes? (A covenant for which Lewis had not stipulated;) and secondly, the collateral and irrelevant question, whether the conveyance has been accepted in satisfaction of Lewis’s covenant? On which Lewis could not take issue without an entire departure from his plea. Indeed, that the replication was good, has been but faintly maintained. The more serious and doubtful question is, was the plea good on general demurrer ? For if it be bad, the demurrer reaches the first error in the pleading, and- Fairfax is entitled to judgment, though his replication be bad.
After the most anxious consideration, I have come to the conclusion that the plea, especially when coupled, with the replication, is good on the general demurrer to the replication.
*248 I assent to the proposition of the appellee’s counsel, that when a plea states facts which amount to a valid ; defence, the omission to state the conclusion of law, shewing quo modo the facts operate in bar of the action, does not necessarily render the plead bad on general demurrer. If Fairfax procured from Lang a deed passing to him a good title to all the land, Lewis was necessarily discharged from his covenant to procure a proper conveyance from Lang to Fairfax of a part. This, I think, is substantially alleged by the plea; and is admitted by the replication, except as to the dower right of Mrs. Lang.
The plea alleges that Fairfax procured a conveyance of the whole land from Lang.
The term conveyance is sometimes used to signify the’’ instrument or act by which a title is professed or attempted to be passed; sometimes as the effect produced, by the operation of such act or instrument, on the thing and the title to it. Land is conveyed, only when the title to it passes. A deed for land may be made without passing a title therein. "When the plea alleges that Fairfax procured a conveyance of the land from Lang, it in effect affirms that he has procured from Lang a deed passing a title in the land; and in that is implied every thing necessary to produce that effect, and among other things Fairfax’s acceptance of the deed. If there was in this respect ambiguity in the plea, that is cured by the replication, which admits the conveyance, but controverts its efficacy in passing the title as to the dower right only. Had the replication stopped there, it might have been a good avoidance of the plea as a full and complete bar, and a general demurrer to it might not have been sustained; but by adding other matter, not responsive to nor in avoidance of the plea, and on which the defendant could not take issue, without a departure from it, the *249 replication is vitiated, and is, as I before said, bad on ■demurrer.
Cabell, J. concurred.
Tucker, P.
It cannot be doubted; since tbe cases of Tomlinson v. Blacksmith, 7 T. R. 132, and Storer v. Gordon, 2 Chitty, 27; 18 Eng. C. L. R., 237; that of late years amendments are very liberally permitted where' the justice of the case requires it, even after a verdict has been rendered between the parties. In the former case, the plaintiff was permitted to amend his declaration by increasing the damages laid, according to the truth of the case as found by the jury; and in the latter, the proceedings were set aside, and the -defendant was permitted to put in a new plea, the justice of the case appearing to demand it. It would seem, then, well established that a defendant may, for .good cause shewn, even after a verdict against him, be permitted to have that verdict set aside, and to make a new defence upon the merits of the matter in •controversy. If this be so, it is not perceived why an ■equal latitude is not allowable in cases of demurrer to -evidence. As Judge Boane well observes, in Taliaferro v. Gatewood, 6 Munf., 320, the power to set aside the proceedings, for the purposes of justice, exists a fortiori in cases of demurrer to evidence, which are under the control and superintendence of the trying court: nor have I ever doubted, that while the proceedings are yet in fieri, it is just as much within the legitimate authority of that tribunal to grant a new trial to either party after a demurrer to evidence, as after a general and unconditional verdict of a jury. It is not, indeed, good cause for such new trial, that the party demurring has discovered that it would have been safer for him to go before the jury, (Green v. Judith, &c,, 5 *250 Rand., 1,) for he has made his choice—he has taken his chance, and he must abide it. But if he has been taken by surprise, or has any other cause for his application which would be held sufficient ground for new trial after general verdict, it would, I apprehend, be sufficient after demurrer. The fact that he has ventured to rest his case upon the law, will not exclude him from the privilege of setting aside the demurrer for the purpose of amending, if justice requires it. Of late years, parties are not held'rigorously to abide by their pleadings.. He.who demurs, is often permitted to withdraw his demurrer, even after it has been argued, and the matter has stood over for judgment, and to plead or reply de novo, in order to let in a trial of the merits. Tidd’s Pract. 766, (p. 657 of 2d American edi.) And he whose pleading is demurred to, may in like manner waive his joinder in demurrer and ask leave to amend. How, it is not perceived why greater rigour should prevail in relation-to demurrers to evidence, where it is obvious that the justice of the case requires them to be set aside.
Taking, then, the powers of the court to be the same on demurrers to evidence as in other cases, there-can be no doubt that it was competent to the court in this case, for good cause shewn, to allow new pleas to be filed, and to set aside the judgment, writ of enquiry, and demurrer, unless that power was taken away by the fact that the judgment here Avas a judgment of the Court of Appeals.
Was there.good cause shewn? Clearly so, I think, upon the face of the record. The evidence produced, and set out in the demurrer, furnished, as this court thought, a good defence, but two out of three judges thought it did not fit the plea. The third judge inclined to think it did. Here then a good defence was excluded, because the pleader erroneously supposed it would be proper under the plea pleaded; in which *251 opinion a most learned judge concurred. What case could more imperatively call for the exercise of the privilege of amendment? Hone whatever. It is a stronger case than those cited at the bar, and justice would indeed merit reproach, if, when a complete defence appears upon the record, it should not be made available to the party, because his plea is not technically proper, although he prays to be permitted to make it so.
It only remains, on this branch of the ease, to en-quire whether the right to set aside the judgment and writ of enquiry, together with the demurrer to evidence, is to be denied because that judgment was rendered by this court? I think not. An inferior court cannot indeed call in question, or- controvert, or overrule, a judgment of this court; but it may, while the cause is still in fieri, unquestionably set aside an interlocutory judgment of this court, tor matter not in conflict with it. Where the judgment is final, indeed, this cannot be, for then there can be nothing further done; but where it is interlocutory, and something remains to be done, the case being within the power of the court below, it is competent for that court, for any cause not impeaching the judgment itself, to set it aside. It is in effect its own judgment, being made so by the provisions of the statute. Of this we have a parallel instance in chancery causes, in which, though a jot or tittle of the decree of this court cannot be varied for any matter which was in the record here, it may yet be reviewed and reversed for new matter, precisely as the decree of the chancellor himself might, be. Oases at law, indeed, have not hitherto occurred,, but it does not therefore follow that they ought not to rest upon a like principle. Upon the whole, therefore, I am of opinion that there was no error in setting aside the demurrer, and giving leave to the defendant to file his additional pleas.
*252 This brings us to the consideration of these additional pleas. Only one of them, with the replication to it, requires examination. It is the second plea, which alone seems to have been held good by the court, and upon which a judgment was rendered in bar of the plaintiff’s action. That judgment, I think, was erroneous, the plea being, as I conceive, altogether imperfect and insufficient.
The first objection to it is its uncertainty and duplicity, (though this is only ground for special demurrer.) I found myself at a loss to determine what was the point on which the defendant rested his defence. The facts set forth in the demurrer to evidence might have suggested any one of three several grounds of •defence: 1st. That Fairfax discharged Lewis from the -duty of procuring the conveyance, by undertaking to procure it himself. 2. That Lewis was disabled from procuring it, because Fairfax had procured the conveyance of the whole tract. And 3. That Fairfax had •actually acquired such a conveyance as he was entitled to by the contract. How, this plea would cover, sustain and justify any one of these defences as well as another, and hence it is double, and therefore bad. Ho one of the defences, indeed, is perfect in itself: ■but it is not essential to duplicity, that the matters pleaded should be well pleaded; though imperfect, if more than one issuable matter is tendered, the plea is double. Stephen on Pleading, 1st edi., 271, 2; 5 Bac. Abr., 445. As where defendant pleaded justification and a release, without alleging the release to be by deed, yet the plea was held double. So here, the fact that Fairfax took on himself to procure the deed from Lang, if properly pleaded, would itself have been a bar, whether he did procure it or not; for, if he took upon himself to do it, and discharged Lewis from doing it, he could have no cause of action. Yet, if the plaintiff had taken issue on that fact, he would have *253 been told that the gist of the plea was the disabling of Lewis from performance; or that he had himself procured such a conveyance as he was entitled to. From the mode of pleading adopted, the plaintiff is at a loss what the material point is which he ought to traverse; and this is a principal objection to duplicity in pleading. 5 Bac. Abr. 444. Whatever he does traverse may be declared to be the wrong point, and the defendant may shift his position as soon as he finds his adversary intends to assail it. Of this we have had an evidence in the argument. Though the defendant’s counsel deny that the plea is double, yet they differ, themselves, as to the defence it offers. One considers it a plea that Lewis was excused from performing; the other, a plea that the plaintiff had got his title. The excuse implies that the deed was not made; while, in the other aspect the plea avers that it toas made. It is not wonderful that the plaintiff was at a loss to reply, or that he has not replied, so as to meet the views of both counsel. His reply goes mainly to the fact of his getting the title he contracted for; and accordingly the replication is assailed for not answering the plea in the other aspect.
I think, however, we may safely take it that the defence which this plea is designed to offer is, that by procuring the conveyance from Lang, Fairfax had put it out of Lewis’s power to procure it. This is indeed the only plausible mode of considering the plea: for it could not be good as a plea that the plaintiff had taken upon himself to procure the deed, and had absolved and discharged the defendant from his duty to do it, without an express averment to that effect; nor could it be good as a plea that the plaintiff had got a good title, (which the defendant was bound to procure,) or a title with which he was satisfied, because one or the other of these facts should have- been averred, in order to make the plea good in this aspect. Let us, *254 then, see ivhat are the essentials to make this a good plea of prevention, and whether prevention is of itself a sufficient answer to the breach assigned in the declaration. I think it is not.
The ground upon which the plea in this aspect rests is, that as, through Fairfax’s agency, Lang had parted with the title, Fairfax had rendered it impossible for the defendant to procure a proper conveyance according to his contract. How, as one of the constituents, or rather as the very gist of this defence is, that the deed from Lang to Fairfax passed the title out of Lang, so the plea ought to have averred every fact which was essential to make the deed effectual. It was not enough to say that Fairfax had procured a conveyance to him, to be made and delivered by Lang, but it should have been also averred that it had been accepted by Fairfax. To say nothing of the defect in the plea in not alleging to whom the conveyance was delivered, it would seem that delivery does not of necessity imply acceptance. Delivery, in one sense, may be made to a stranger for me, or to my agent not authorized to accept; and if I do not accept afterwards, the deed is ineffectual. 4 Cruise’s Dig., 11, 80. It is true that the title passes immediately upon the execution and delivery, provided there is subsequent assent ■on the part of the grantee, (Ibid,) but otherwise not. How, the essence of the defence here is, that Lewis could not procure a conveyance, because the title was in the plaintiff- by the operation of Lang’s deed. To give it that effect, it must have been-accepted by Fair-fax. The acceptance was rightly regarded by all the judges on the’former appeal as an essential fact in the defence upon this point. In considering the demurrer to evidence, Judge Green thought the fact of acceptance sufficiently proved; but the question now is, not whether the defendant may not be able to prove the fact, but whether, in making out his defence by plea, *255 lie should not have averred it. I am of opinion that he should, and that the omission is a defect in substance, which renders the plea bad upon general demurrer.
Again, it was not enough to aver that a deed had been made by Lang, but the plea should have alleged ■the execution of a proper conveyance; that is, (as Judge Green very properly interprets the contract,) of a conveyance of a good title. The covenant, he says, •“ was substantially a covenant to procure a good title; for if Lang had no title; his deed could pass nothing, and could not therefore be called a conveyance. And in like manner, if his title was in any degree imperfect or incumbered, his conveyance would be to that degree imperfect and unavailing.” 2 Rand., 38. And I will add, if the conveyance itself was imperfect; if it fell short of that which Lewis was bound to procure; if there was any thing undone which he ought to have done, and from doing which he has not been disabled by the plaintiff’s act, he has broken the covenant, and is liable to damages commensurate with the breach. In order therefore to make out this defence, his plea •should have averred that Lang had made a proper conveyance, that is, a conveyance of a good title. If his conveyance does not pass a good title, it is still Lewis’s duty to procure him to make such conveyance. If he has no title, it has not been Fairfax’s act that has prevented Lewis’s compliance. If he has an imperfect title, and there is some outstanding title in another, the conveyance of the imperfect title by Lang to Fairfax, can be no barrier to Lewis’s procuring Lang to acquire and convey the outstanding title. And lastly, if the conveyance be an improper conveyance; if it be ineffectual to convey such right as Lang had; if it be ineffectual to bar the dower of his wife, there is still something undone which Lewis, under his covenant* is required to- do, and which he is not prevented from *256 doing "by the imperfect or defective conveyance. What,. for instance, hinders his procuring a release of the-widow’s dower, and extinguishing that claim which he was hy contract hound to see extinguished? What hindered his compelling Lang in his lifetime to remedy the omission of the general warranty in the deed* either by the surrender of the- old, and the execution of a new deed, with proper covenants, or by some other-equivalent means? Unless, therefore, the conveyance-was of a good title* there was still something undone-which Lewis might yet have done, and to-which the-deed from Lang to- Fairfax could - form no barrier.. Hence the necessity of averring the deed to-have been, a proper conveyance* which would exclude at once-every inference that something remained to be done,, beyond the execution of an imperfect and ineffectual deed.
It may be said, indeed, that Fairfax’s conduct may-have absolved Lewis, because he took the-matter on himself. -Very possibly: but that would dot prove that he had a right to make this- defence* but only that he-might perhaps-successfully have made another.
The plea* however, is further defective in not answering the whole breach, The breach is not only that Lewis had failed to procure- a proper conveyance from Lang, but also that Lang had not good-title whereby he could convey. This was within the covenant,, if, as Judge Green says, and as I think, it was substantially a covenant to procure a good title. How, to this allegation there is-no -reply. It stands unanswered -by the plea, and is therefore-admitted. Consequently, as-Lang had no title, his conveyance operated nothing, (as Judge Green has very properly decided*) and it cannot therefore have prevented the performance of his contract by Lewis.
We come now to the replication, Admitting the plea to be good, does not the replication offer-a. good *257 avoidance in substance, which will be sufficient on general demurrer? "Whether the replication be or be not double, is unimportant, as the defendant did not demur specially. But in truth he was bound to reply double, as the plea was double; for where that is the ease, if the party does not demur for doubleness, he is obliged to answer both parts. 1 Ventr., 272; 5 Bac. Abr., 445.
The question, however, is whether this replication ■denies or avoids the matter of the plea, considered in either aspect. Divested of technicality, the defence of the plea is two-fold: 1. That the title having been procured from Lang by Fairfax, Lewis was disabled from compliance. 2. That Fairfax had such a conveyance as he was entitled to. To these allegations it is answered, that Lang was a married man, and that the widow’s dower was not relinquished; and moreover, that Fairfax never had accepted any conveyance of the Green river land in satisfaction (that is, as I understand it, in compliance with, or in fulfilment) of the defendant’s covenant to procure a proper conveyance from Lang. How, this I take to be a full answer to the whole plea. It negatives the fact that the title was no longer in Lang, by denying that the deed was ever accepted; and it further negatives the inference that Lewis was prevented from complying with his covenant in all things by Fairfax’s act, since it shews that there was an unconveyed right of dower, which Lewis was bound to procure to be relinquished, and which he might have procured to be relinquished if he had chosen to do so. So much for the first aspect of the plea. Then, as to the second, the allegation of the outstanding right of dower completely negatives the assertion that the plaintiff had got such a deed as he was entitled to. It is said, indeed, that the repli *258 cation does not aver that the widpw is still living. To this, several replies present themselves. First, it was unimportant; for though she be now dead, that does not excuse the defendant from failure to procure her relinquishment, that failure having been a breach for which the plaintiff was entitled at least to nominal damages. Secondly, when a party is shéwn to be living at one time, the continuance of life is presumed until the contrary is proved. The death subsequently,, is a fact that must come out from the other side, if it will avail any thing. For if the proof of the death of any person known to be once living is incumbent on> the party who relies on the death, (Starkie on Ev., part 4, p. 457; Wilson v. Hodges, 2 East, 312,) it would seem to follow that where the plaintiff alleges that the person was living on a given day, if the defendant relies upon his subsequent death, it is incumbent on him to plead it.
Upon a full view of the whole matter, I think that judgment should be given against the defendant upon the 'second plea, and that the cause should go back for trial upon the original plea, which was never withdrawn, and upon the first additional plea, on which there is an issue made up, and which. seems to me to offer a fair defence, and to bring the merits fairly forward for trial. It is very clear in this case that the plaintiff contracted for a good title, and gave a valuable property for that which he expected to get in return. It is very probable he has been overreached, and that what, he purchased may be worth but little after he gets it, as he seems to have attempted to prove that the land was not worth the taxes. Be this as it may, he is entitled to have what he contracted for, and the court should endeavour to see the pleadings so moulded as that justice shall be done to both parties. *259 Hitherto this desirable object seems not to have been attained.
I am of opinion to reverse the judgment.
Judgment affirmed.*

 Brooke and Parker, J., heard the argument of the case, though they were not present at the decision: and hy a note furnished to the reporter hy the president, it appears that Parker concurred with the three judges who were present at the decision, and Brooke dissented from them, as to the propriety of setting aside the demurrer to evidence, and allowing additional pleas to he filed; and that Brooke concurred with Stanard and Cabell, J., as to the sufficiency of the second additional plea, and the insufficiency of the replication, while Parker ■ expressed no opinion on those points.